UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSH STONE,

                Plaintiff,

       -against-

ARIANA GRANDE, THOMAS LEE BROWN,
TAYLOR MONET PARKS, KIMBERLY ANNE
KRYSIUK, VICTORIA MONET MCCANTS,
CHARLES MICHAEL ANDERSON, MICHAEL
DAVID FOSTER, NJOMZA VITIA, BMG
RIGHTS MANAGEMENT US LLC, WARNER-
TAMERLANE PUBLISHING CORP., KOBALT
SONGS MUSIC PUBLISHING, THE ROYALTY
NETWORK INC., UNIVERSAL MUSIC
CORPORATION, CONCORD MUSIC GROUP,
INC.,

                Defendants.

Civil Action No. 20-CV-441-NRB

**ORAL ARGUMENT REQUESTED**

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
# MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**PRYOR CASHMAN LLP**
**7 Times Square**
**New York, New York 10036**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    A.   The Plaintiff ......................................................................................................3

    B.   The Defendants and the Grande Work ............................................................4

    C.   The FAC's Insufficient Factual Allegations...................................................4

    D.   Procedural History ...........................................................................................6

ARGUMENT ...................................................................................................................6

    I.    STANDARD OF REVIEW .............................................................................6

    II.   PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT ......8

        A.    Plaintiff Has Failed To Allege Any
             Protectable Similarities Between The Works At Issue .........................................9

            1.   The Short, Commonplace Phrases "I Got It" and
                 "Want It" Are Not Copyrightable as a Matter of Law....................................9

            2.   Plaintiff Did Not Create the Phrase "I Got It," or "Want it,"
                 Which Have Been Used In Countless Prior Musical Works.........................11

            3.   The Generic Cadence of the Phrases At Issue Is
                 Not Protectable and Expressed Differently in the Grande Work .................13

        B.    No "Substantial Similarity" Exists
             Between Plaintiff's Song And Defendants' Song................................................15

            1.   The Songs Do Not Share Any Music...........................................................17

            2.   The Lyrics of Both Songs, and the
                 Message They Convey, are Vastly Different .................................................18

    III.  PLAINTIFF'S LANHAM ACT CLAIMS ARE FORECLOSED AS A
         MATTER OF LAW BY THE SUPREME COURT'S DECISION IN *DASTAR* ..........20

        A.    Allegations of "Failure to Credit" or "Misappropriation
            of Talent" Do Not State a Claim Under the Lanham Act ....................................20

**TABLE OF CONTENTS,** *continued*

B.   The Authority Cited by Plaintiff is Inapposite
and Relies on Overruled, Pre-*Dastar* Case Law ...................................................22

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR
VICARIOUS COPYRIGHT INFRINGEMENT ........................................................24

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>                                                                 <u>**PAGE(s)**</u>

*Apps v. Universal Music Grp., Inc.*,
    763 F. App'x 599 (9th Cir. 2019) .....................................................................11

*Arica Inst., Inc. v. Palmer*,
    761 F. Supp. 1056 (S.D.N.Y. 1991)...................................................................9

*Ariel (UK) Ltd. v. Reuters Grp. PLC*,
    No. 05 CIV 9646 (JFK), 2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006) ...............................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................6, 7

*Atrium Grp. v. Harry N. Abrams, Inc.*,
    565 F. Supp. 2d 505 (S.D.N.Y. 2008) .................................................................21

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) .........................................................................24

*Bay Harbour Mgmt. LLC v. Carothers*,
    282 F. App'x 71 (2d Cir. 2008) .........................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................6, 7, 24

*Berry v. Deutsche Bank Trust Co. Am.*,
    No. 07 Civ 7634(WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008),
    *aff'd*, 378 F. App'x 110 (2d Cir. 2010) ............................................................24

*Boone v. Jackson*,
    206 F. App'x 30 (2d Cir. 2006) .........................................................................14

*Castro v. Cusack*,
    No. 15 Civ. 6714(ENV) (LB), 2019 WL 3385218 (E.D.N.Y. Jul. 26, 2019) ...........................8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .........................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp., Dastar*,
    539 U.S. 23 (2003) .........................................................................*passim*

*Edwards v. Raymond*,
    22 F. Supp. 3d 293 (S.D.N.Y. 2014)...................................................... 10, 11, 16, 19

**CASES** PAGE(s)

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ................................................................................9

*Gottlieb Dev. LLC v. Paramount Pictures Corp.,*
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) .................................................9

*Gray v. Perry,*
    No. 2:15-cv-05642-CAS-JCx, 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020).................11, 14

*Guity v. Santos,*
    No. 18-CV-10387 (PKC), 2019 WL 6619217 (S.D.N.Y. Dec. 5, 2019,
    *reconsideration denied,* 2020 WL 4340417 (S.D.N.Y. July 28, 2020) ........................9, 10, 19

*Hirsch v. Arthur Andersen & Co.,*
    72 F.3d 1085 (2d Cir. 1995) .............................................................14

*Hobbs v. John,*
    722 F.3d 1089 (7th Cir. 2013) ..........................................................11

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003) .................................................................8

*La Pietra v. RREEF Am., L.L.C.,*
    738 F. Supp. 2d 432 (S.D.N.Y. 2010) .................................................7

*Lane v. Knowles-Carter,*
    No. 14 CIV. 6798 PAE, 2015 WL 6395940 (S.D.N.Y. Oct. 21, 2015) ..........................*passim*

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005) ...............................................................7

*Levine v. Landy,*
    832 F. Supp. 2d 176 (N.D.N.Y. 2011) ..........................................22, 23

*Lil' Joe Wein Music, Inc. v. Jackson,*
    245 F. App'x 873 (11th Cir. 2007) ...................................................15

*Matthew Bender & Co. v. West Pub. Co.,*
    158 F.3d 693 (2d Cir. 1998), *aff'd,* 277 F. App'x 43 (2d Cir. 2008) ......................................24

*McDonald v. West,*
    138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd,* 669 F. App'x 59 (2d Cir. 2016)................*passim*

**CASES**                                                                                  **PAGE(s)**

*Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*,
   No. 16-CV-6109(VB), 2017 WL 3917040 (S.D.N.Y. Sept. 5, 2017)....................................23

*National Lighting Co. v. Bridge Metal Indus., LLC*,
   601 F. Supp. 2d 556 (S.D.N.Y. 2009) ...........................................................................21, 22

*Patrico v. Voya Fin., Inc.*,
   No. 16 Civ. 7070 (LGS), 2017 WL 2684065 (S.D.N.Y. Jun. 20, 2017)...............................25

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ........................................................................................ 7, 15, 16

*Peters v. West*,
   692 F.3d 629 (7th Cir. 2012) ........................................................................................ 12, 13

*Pickett v. Migos Touring, Inc.*,
   420 F. Supp. 3d 197 (S.D.N.Y. 2019) ................................................................ 8, 10, 11, 13

*Prunte v. Universal Music Grp., Inc.*,
   699 F. Supp. 2d 15 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) ..........................15

*Pyatt v. Raymond*,
   No. 10 Civ. 8764 CM, 2011 WL 2078531 (S.D.N.Y. May 19, 2011),
   *aff'd*, 462 F. App'x 22 (2d Cir. 2012) ..........................................................................*passim*

*Rapoport v. Asia Elecs. Holding Co.*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000).......................................................................7, 13, 15, 17

*Rose v. Hewson*,
   No. 17 Civ. 1471(DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ............................14, 16

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) .............................................................................................14

*Waldman Publ'g Corp. v. Landoll, Inc.*,
   43 F.3d 775 (2d Cir. 1994) ..................................................................................................23

*Weber v. Geffen Records, Inc.*,
   63 F. Supp. 2d 458 (S.D.N.Y. 1999)....................................................................................22

*Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007)............................................................................21, 22

**CASES**                                                                          **PAGE(s)**

*Williams v. Citibank, N.A.*,
    565 F. Supp. 2d 523 (S.D.N.Y. 2008) ...................................................................13

*VMG Salsoul, LLC v. Ciccone*,
    No. CV 12-0567 BRO (CWx), 2013 WL 8600435 (C.D. Cal. Nov. 18, 2013),
    *aff'd in relevant part*, 824 F.3d 871 (9th Cir. 2016) .............................................15

## STATUTES & RULES

37 C.F.R. § 202.1(a)....................................................................................................11

Fed. R. Civ. P. 8(a)........................................................................................................1

Fed. R. Civ. P. 8(a)(2)...................................................................................................6

Fed. R. Civ. P. 11......................................................................................................3, 6

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 6, 7

17 U.S.C. § 301...............................................................................................................6

17 U.S.C. § 504(a).......................................................................................................20

## TREATISE

1 *Nimmer on Copyright* § 2.01[B][3] (2019) ...........................................................11

Defendants Ariana Grande-Butera, p/k/a Ariana Grande, Thomas Lee Brown, Taylor Monet Parks, Kimberly Anne Krysiuk, Victoria Monet McCants, Charles Michael Anderson, Michael David Foster and Njomza Vitia (together, the "Individual Defendants"), BMG Rights Management US LLC, Warner-Tamerlane Publishing Corp., Kobalt Songs Music Publishing, The Royalty Network Inc., Universal Music Corp., (improperly sued as "Universal Music Corporation"), and Concord Music Group, Inc. (together, the "Publisher Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "FAC")[1] of Plaintiff Josh Stone ("Plaintiff") pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) ("Defendants' Motion").

## PRELIMINARY STATEMENT

Plaintiff brings this baseless action against Defendants for copyright infringement and violation of the Lanham Act, claiming that Defendants' musical composition, entitled *7 Rings* (the "Grande Work") infringes Plaintiff's copyright in a musical composition entitled *You Need It, I Got It* ("Plaintiff's Work").  The melodies of these two songs are not alleged to be the same, much less substantially similar, nor are any of the musical notes or instrumentation at issue (indeed, Plaintiff's Work is fully rapped and has no melody).  Rather, Plaintiff's claims are based solely on the fact that (i) both songs include the commonplace, monosyllabic and unprotectable lyrics "I got it" and "want it" in their respective choruses (the *only* lyrical similarities) and (ii) the choruses of both songs are rapped, or spoken (not sung) in an allegedly similar cadence over eight measures, yet any ordinary listener can readily hear that the (unremarkable) cadences of each are actually different.  Plaintiff fails to identify any other "similarity" between these two works or any other basis to bring suit.

---

[1] The First Amended Complaint is annexed as Exhibit A to the Declaration of Ilene S. Farkas, dated September 29, 2020.  References to "Ex. _" are to the Farkas Declaration.

This Court can examine these two works on this motion and determine that no protectable expression has been, or can be, identified by Plaintiff and that the two works are not substantially similar as a matter of law.  After applying the ordinary observer/listener test (which this court can do on Defendants' Motion as a matter of well-established precedent), it is obvious that no actionable copying has occurred here, and that these two works are entirely dissimilar.  More specifically:

- <u>First</u>, Plaintiff cannot possibly base his infringement claim on the shared lyrics "I got it" or "want it."  It is black letter law that common words and short phrases are not protectable under copyright law, nor are such phrases original to Plaintiff.  (*Infra* § II.A.1-2.)[2]

- <u>Second</u>, Plaintiff cannot base an infringement claim on the allegation that the rapped, or chanted chorus of Plaintiff's Work ("You want it, I got it, you need it, I got it") is spoken in the same cadence as the rapped words in the chorus of the Grande Work ("I want it, I got it, I want it, I got it"), when an ordinary listener can readily determine that the words are chanted with different duration and emphasis.  (And there are only so many ways to chant these simple phrases).  In any event, it is well-settled that meter, tempo and general rhythmic patterns, as well as eight-measure phrases, are basic musical building blocks that are unprotectable and cannot support a claim for infringement.  (*Infra* § II.A.3.)

- <u>Third</u>, viewed holistically, both songs are entirely different musically, lyrically and thematically.  Plaintiff's Work is a fully rapped boast about the rapper's ability to supply endless drugs while threatening violence through misogynistic lyrics.  The Grande Work, in stark contrast, features melodic verses sung to the instantly-recognizable melody of (the

---

[2] Indeed, each song uses the short phrase "want it" differently.  Plaintiff's Work contains the phrase "*you* want it" and alternates between "you want it" and "you need it," while the Grande Work contains the repeated lyric "*I* want it." Of course, even if the phrases were identical, no one can own the phrases "you want it" or "I want it."

duly-licensed) *My Favorite Things* from *The Sound of Music*, and highlights female empowerment via the singer's ability to purchase what she desires, including all of her "favorite things," for herself and her friends, not needing anyone else to do so. (*Infra* § II.B.) No amount of discovery will alter the songs at issue.

Moreover, Plaintiff continues to assert Lanham Act claims. As Defendants informed Plaintiff in *both* of their pre-motion letters, Plaintiff's allegations of a "failure to credit" him as an artistic creator and misappropriation of his "artistic talent" do not state claims for false designation of origin or reverse passing off under the Lanham Act as a matter of law. This theory of liability was foreclosed by the Supreme Court almost two decades ago in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and that view has been repeatedly affirmed by courts in this District, including this Court. (*Infra* § III.)

This is now Plaintiff's second attempt to allege actionable similarity between the two songs at issue. After Defendants filed their initial pre-motion letter setting forth the deficiencies in Plaintiff's initial complaint, pursuant to this Court's July 14, 2020 order, Plaintiff had the opportunity to file an amended pleading, provided he did so within the confines of Federal Rule of Civil Procedure 11, an admonishment Plaintiff ignored.

Accordingly, it is respectfully submitted that Defendants' Motion should be granted and the FAC should be dismissed in its entirety with prejudice and without leave to replead.

## STATEMENT OF FACTS

### A.    The Plaintiff

Plaintiff is a self-described "hip hop artist, singer, songwriter and record producer." (FAC ¶ 7.) Plaintiff claims to be the author of Plaintiff's Work. (*Id.* ¶ 33.) Plaintiff alleges vaguely that Plaintiff's Work "is registered and copyrighted with the United States Copyright Office" (*id.*), but he failed to annex any registration to the FAC. Plaintiff does not allege that

Plaintiff's Work was ever commercially released.

### B.    The Defendants and the Grande Work

Defendant Ariana Grande-Butera, professionally known as Ariana Grande ("Grande"), is a successful entertainer, songwriter and Grammy award-winning recording artist. Grande and the other Individual Defendants co-authored the Grande Work, which was recorded by Grande and released in 2019 by Republic Records, a division of UMG Recordings, Inc., on the album entitled, *Thank U, Next*. (FAC ¶¶ 1, 8, 9-15, 32.) The Publisher Defendants are alleged to be music publishers that "own[] or control[] a portion" of the Grande Work. (*Id.* ¶¶ 16-21.)

The Grande Work is based largely on a pre-existing work, the iconic song *My Favorite Things* from the 1959 musical *The Sound of Music*, written by Richard Rodgers and Oscar Hammerstein II, and was duly licensed from the owners of that composition prior to the release of the Grande Work. The authors and publishers of the Grande Work agreed to convey 90% of the publishing royalties from the exploitation of the Grande Work to the owners of *My Favorite Things*, leaving 10% for the remaining eight authors of the Grande Work.[3]

### C.    The FAC's Insufficient Factual Allegations[4]

Plaintiff alleges that he wrote Plaintiff's Work and recorded the master recording on January 3, 2017. (*Id.* ¶ 33.) Plaintiff alleges that the Grande Work was released more than two years later, on January 18, 2019. (*Id.* ¶ 1.) Plaintiff did not seek copyright registration until February 2019. (Ex. E.) Plaintiff filed a registration for the sound recording of Plaintiff's Work, not the musical composition, and it is unclear whether a proper registration exists for Plaintiff's

---

[3] Plaintiff incorporates into the FAC the music and lyrics of Plaintiff's Work and the Grande Work. (FAC ¶¶ 56-63.)

[4] Solely for purposes of this motion, given the abject lack of substantial similarity between the songs at issue, Defendants are considering the "facts" pled by Plaintiff regarding "access" as "true." (FAC ¶¶ 37-46.) Should any portion of the FAC survive Defendants' Motion, Defendants intend to vigorously dispute that any of the creators of the Grande Work had access to the obscure Plaintiff's Work.

Work.  This registration also lists two other supposed authors who are not parties to this suit.  (*Id.*)

The similarities alleged by Plaintiff do not state a claim for copyright infringement.  *First*, Plaintiff asserts that the commonplace, simple words in the chorus of the Grande Work ("I want it, I got it, I want it, I got it") infringe Plaintiff's alleged rights in the *different* one-syllable lyrics in the chorus of Plaintiff's Work ("You need it, I got it, you want it, I got it.")  (*Id.* ¶¶ 55, 57, 59, 63.).  *Second*, Plaintiff asserts that the rhythmic cadence with which both choruses are rapped, or spoken, is similar.  (*Id.* ¶¶ 55, 57, 60-61, 63.)  As demonstrated herein, setting generic and unprotectable phrases to different cadences cannot state a claim for infringement as a matter of law (and, even if the cadences were the same, they are nevertheless generic and unprotectable). While Plaintiff attempts to give the illusion of more alleged similarities by describing the same things different ways, when stripped of the verbiage, Plaintiff does not and cannot identify any other alleged protectable similarities between the two works.[5]

Plaintiff also brings Lanham Act claims arising out of the same alleged similarities between these two copyrightable works, complaining of the Defendants' alleged "misappropriation" of his "artistic talent" and failure to credit Plaintiff for his alleged artistic contributions to the Grande Work.  (*E.g.*, *id.* ¶¶ 77-79, 95-96, 98.)  Solely on the basis of these conclusory allegations, Plaintiff asserts claims for "false designation of origin" and "reverse passing off" under the Lanham Act.  (*Id.* ¶¶ 93-104.)  As demonstrated herein, these claims are preempted by the Copyright Act and well established Supreme Court precedent.[6]

---

[5] Plaintiff describes similarities in the "hook" and "chorus" (which are the same thing) or "beat," "rhythm," "rhythmic structure," "rhythmic patterns," "metrical placement," "Rhythmic Structure of the Hooks," "Additional Identical Rhythms" (which are all the same thing) and "Lyrics and Narrative Context," "narrative context" (same) and "rhythmic and lyrical elements" and "identical metrical placement of the paired phrases" (same), but these all boil down to the same two unprotectable alleged similarities.  (*See, e.g.*, FAC ¶¶ 2, 48-50, 57-58, 60.)

[6] In his initial complaint, Plaintiff also asserted state law claims for unjust enrichment and an accounting (ECF No. 26 ¶¶ 96-97, 102), but subsequently agreed to withdraw those claims when Defendants

### D.    Procedural History

On July 8, 2020, Defendants requested a pre-motion conference to seek leave to move to dismiss Plaintiff's initial complaint and set forth the bases of their motion.  (ECF No. 25.)  After Plaintiff responded on July 13, 2020 (ECF No. 26), the Court issued an order granting Plaintiff the option to amend his complaint.  (ECF No. 27.)  The Court warned Plaintiff, however, that any amendments must comply with Rule 11 of the Federal Rules of Civil Procedure.  (*Id.*)

Plaintiff filed his FAC on July 28, 2020.  (ECF No. 28).  In the FAC, Plaintiff did not identify any additional similarities between the two works (nor could he); instead, Plaintiff resorted to more window-dressing to give the illusion that the few alleged "similarities" (between unprotectable elements) are more substantial than they actually are.  Plaintiff also doubled down on his Lanham Act claims notwithstanding Defendants' repeated explanation that *Dastar* and its progeny foreclosed such claims.  By letter-motion dated August 11, 2020, Defendants renewed their request for a pre-motion conference, seeking leave to move to dismiss the FAC.  (ECF No. 29.)  On August 18, 2020, the Court issued an order permitting Defendants to bring the instant motion without need for a pre-motion conference.  (ECF No. 31.)

## ARGUMENT

### I.    STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain a "showing" that a plaintiff is entitled to relief, and that this substantive threshold is not achieved by "blanket assertion[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  A motion to dismiss under Rule 12(b)(6) tests the sufficiency and plausibility of plaintiffs' allegations.  *Id.* 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

---

explained that they were preempted by Section 301 of the Copyright Act.  Plaintiff should have accorded the same treatment to his foreclosed Lanham Act claims.

In order to survive a motion to dismiss, a plaintiff must do more than solely recite the elements for a violation – he or she must plead facts with sufficient particularity so that his or her right to relief is more than mere conjecture. *See Twombly*, 550 U.S. at 561-62; *Iqbal*, 556 U.S. at 677-78. While factual allegations in a complaint are generally taken as true on a motion to dismiss, "'conclusions of law or unwarranted deductions of fact are not admitted.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005); *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 436 (S.D.N.Y. 2010) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").[7] Dismissal is warranted where the complaint fails to allege enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider the pleadings, as well as materials incorporated into the complaint by reference, materials that the plaintiff relied on in bringing suit, materials integral to the complaint, and matters of which a court may take judicial notice. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71, 76 (2d Cir. 2008); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

Plaintiff explicitly incorporates and relies upon the works at issue in his FAC. (FAC ¶¶ 2, 36, 57-63.) Accordingly, the Court can review the two works at issue on this motion and determine, as a matter of law, that no protectable elements have been copied and no substantial similarity exists between the works as courts have routinely done on Rule 12(b)(6) motions in infringement actions. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (affirming dismissal of plaintiff's copyright infringement claim and explaining that "it is entirely appropriate for the district court to consider the similarity between [contested]

---

[7] Except where noted, citations and internal quotations herein are omitted, and all emphases are supplied.

works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation"); *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 206 (S.D.N.Y. 2019) (granting dismissal and observing that "when evaluating whether there is substantial similarity between the defendant's work and the protectable elements of the plaintiff's work, 'no discovery or fact-finding is typically necessary, because what is required is only a . . . comparison of the works'"); *Lane v. Knowles-Carter*, No. 14 CIV. 6798 PAE, 2015 WL 6395940, at *4 (S.D.N.Y. Oct. 21, 2015) ("If . . . the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief"); *Pyatt v. Raymond*, No. 10 Civ. 8764 CM, 2011 WL 2078531, at *6-10 (S.D.N.Y. May 19, 2011) (granting dismissal after comparing lyrics and sound recordings because no substantial similarity existed between defendant's song and any protectable element of plaintiff's song), *aff'd*, 462 F. App'x 22 (2d Cir. 2012).[8]

Defendants have annexed the lyrics and recordings of each work to the Declaration of Ilene S. Farkas submitted herewith.

## II.   **PLAINTIFF FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT**

A plaintiff asserting a copyright infringement claim must show "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). To establish unauthorized copying, "a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Id.* Actual copying may be established with proof that

---

[8] Any request for leave to amend a second time should be denied because no amount of discovery will change these songs and "[t]here is absolutely no indication that [Plaintiff] could remedy the complaint's defects if he were given leave to amend it yet again." *Castro v. Cusack*, No. 15 Civ. 6714(ENV)(LB), 2019 WL 3385218, at *9 (E.D.N.Y. Jul. 26, 2019) (dismissing infringement claim with prejudice and denying leave to amend).

the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between *protectable elements* of the works. *Pyatt*, 2011 WL 2078531, at *4-5; *Arica Inst., Inc. v. Palmer*, 761 F. Supp. 1056, 1064 (S.D.N.Y. 1991).

Mere allegations of copying alone are insufficient to state a claim because not all copying amounts to copyright infringement. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright claim requires the "copying of constituent elements of the work that are original" and where the allegedly infringed material is not original to the plaintiff or otherwise protectable, no claim for infringement can lie. *Id.* Indeed, when the similarities alleged consist of unprotectable elements, such as concepts or commonplace unoriginal expression, no claim of infringement has been alleged. *Guity v. Santos*, No. 18-CV-10387 (PKC), 2019 WL 6619217, at *5 (S.D.N.Y. Dec. 5, 2019) (dismissing plaintiff's claims for copyright infringement where "[t]he shared usage of single everyday words . . . fail[ed] to show substantial similarity between the two songs."), *reconsideration denied*, 2020 WL 4340417 (S.D.N.Y. July 28, 2020); *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015) (the "basic buildings blocks of music, including tempo and individual notes" are not copyrightable), *aff'd*, 669 F. App'x 59 (2d Cir. 2016); *Lane*, 2015 WL 6395940, at *6, 8 (granting dismissal where there were "very limited copyrightable elements common to the songs" and "no reasonable jury could find [that the songs are] substantially similar"); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008).

A.    **Plaintiff Has Failed To Allege Any Protectable Similarities Between The Works At Issue**

1.    The Short, Commonplace Phrases "I Got It" and <u>"Want It" Are Not Copyrightable as a Matter of Law</u>

Plaintiff's copyright infringement claim is centered around the alleged similarity between a portion of the lyrics to the chorus of Plaintiff's Work ("You need it, I got it, you want it, I got

9

it") and some of the lyrics of the chorus of the Grande Work ("I want it, I got it, I want it, I got it").  (FAC ¶¶ 54, 56.)  A side by side comparison of the chorus lyrics to each song are set forth below (*see* Ex. C):

| Chorus of the Grande Work | Chorus of Plaintiff's Work |
|---|---|
| I want it, I got it | You need it, I got it |
| I want it, I got it, | You want it, I got it |
| I want it, I got it, | You need it, I got it |
| I want it, I got it, | It's all for, the profit |
| You like, my hair? | You need it, I got it |
| Gee thanks, just bought it | You want it, I got it |
| I see it, I like it | You need it, I got it |
| I want it, I got it (yeah) | It's all for, the profit |

The *only* identical portions of the choruses – which consist of monosyllabic, commonplace words – are the generic, everyday phrases "I got it" and "want it" – although the complete phrase is "*You* want it" in Plaintiff's Work, and "*I* want it" in the Grande Work, and Plaintiff's Work alternates between "You *need* it, I got It" and "You *want* it, I got it" while the Grande Work simply repeats "I want it, I got it."  Indeed, these phrases are used differently:  in Plaintiff's Work, the singer offers to supply narcotics to the listener, while in the Grande Work, the singer does not need anyone to buy her "favorite things" because she can do so herself.

Case law is legion that short, commonplace phrases such as "I got it" or "want it" are not protectable, and courts routinely dismiss such claims at the pleadings stage.  In fact, these short phrases are textbook examples of a commonplace, everyday phrase that is not entitled to copyright protection.  *See, e.g., Pickett*, 420 F. Supp. at 207 (phrase "walk it like I talk it" not protectable); *Guity*, 2019 WL 6619217, at *4 (phrase "You're mine" not protectable because it is "too short and generic to meet the required threshold for creativity . . ."); *West*, 138 F. Supp. 3d at 456-57 (phrase "made in America" not protectable because "[i]t is far too brief, common, and unoriginal to create any exclusive right vested in Plaintiff."); *Edwards v. Raymond*, 22 F. Supp.

3d 293, 298-99 (S.D.N.Y. 2014) (phrase "caught up" not protectable because it "is not original to the Plaintiffs; it is used in everyday speech in a variety of contexts."); *Pyatt*, 2011 WL 2078531, at *8 (granting dismissal where "phrase 'caught up' . . . is used commonly in everyday speech."); *see also, e.g.*, *Apps v. Universal Music Grp., Inc.*, 763 F. App'x 599, 600 (9th Cir. 2019) (Mem.) (no similarity where "only lyrical commonality between both songs is the phrase "I need to know now" and observing that "[w]ords and short phrases" and "ordinary phrases" "are not copyrightable"); 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are not protected by copyright and cannot give rise to an infringement claim); 1 *Nimmer on Copyright* § 2.01[B][3] (2019) ("refusal to protect short phrases applies *a fortiori* to one or two words. Even marginally longer phrases ('[I]f no pulse, start CPR') are appropriately denied copyright protection.").[9]

### 2. Plaintiff Did Not Create the Phrase "I Got It" or "Want it," Which Have Been Used In Countless Prior Musical Works

In addition, Plaintiff "cannot claim that []he coined the phrase" "I got it" or "want it" because each "existed long before []he included it in h[is] song." *See Pyatt*, 2011 WL 2078531, at *8. The Court may take judicial notice that these commonplace phrases, or variations of them, have been used in countless musical works released prior to the alleged creation or registration of Plaintiff's Work. *See, e.g.*, *Pickett*, 420 F. Supp. 3d at 207 (granting dismissal and taking

---

[9] Plaintiff's allegation that the purportedly infringing portions of the Grande Work's chorus are "used three separate times in 7 RINGS" (because the chorus repeats three times) "for a total of approximately 48 seconds" and "make[s] up nearly 30% of the entire 7 RINGS song" does not convert an unprotectable phrase into protectable expression or otherwise save Plaintiff's infringement claim. (FAC ¶¶ 49-50.) Courts have recognized as a matter of law that repetition is a common element in music. *See, e.g., Edwards*, 22 F. Supp. 3d at 300 (dismissing plaintiff's copyright infringement claim, *inter alia*, because "[m]any choruses feature a phrase repeating on every other line"); *Gray v. Perry*, No. 2:15-cv-05642-CAS-JCx, 2020 WL 1275221, at *5 (C.D. Cal. Mar. 16, 2020) (a "'recurring vocal phrase' [and] repeating 'hook phrases'" not protectable); *Hobbs v. John*, 722 F.3d 1089, 1096 (7th Cir. 2013) (affirming dismissal of infringement claim where both songs repeated the "commonplace" phrases "to hold you" and "you'll never know" and observing that "[r]epetition is ubiquitous in popular music.").

judicial notice of 32 instances of prior use of the term "'walk it like I talk it,' and slight variations of it" where such examples "can be obtained from widely available and reliable sources, the accuracy of which cannot reasonably be questioned."); *West*, 138 F. Supp. 3d at 456 (granting dismissal and observing that phrase "Made in America" "is a well-known part of the national vernacular . . ."); *see also Peters v. West*, 692 F.3d 629, 631 (7th Cir. 2012) (affirming dismissal where the phrase "what does not kill me, makes me stronger" "has been repeatedly invoked in song lyrics over the past century").

By way of example only:

- *You Want It, You Got It*—Detroit Emeralds (1971)
- *You Want It, You Got it*—B.T. Express (1975)
- *Bust A Move*—Young MC (1989) ("if you want it then baby you've got it")
- *Imaginary Player*—Jay Z (1997) ("you need it, I got it")
- *Candy (Drippin' Like Water)*—Snoop Dogg (2006) ("you want 'em, I got 'em")
- *You Want It, I Got It*—The Meteors (2008)
- *I Got It*—Gorilla Zoe (2009)
- *Go Get It*—T.I. (2012) ("if I want it, bet I got it")
- *The Way*—Ariana Grande (2013) ("so if you need it, I got it, I got it every day")
- *Cute*—DRAM (2016) ("if you need it and I got it you can have it")
- *I Got It*—Sophie Beem ft. Fetty Wap (2016)
- *Step On Up*—Ariana Grande (2016) ("got it" and "you got it")
- *Ask Somebody*—Offset and Mango Foo (2016) ("now if I want it, I got it")
- *Get the Bag*—ASAP Mob (2017) ("I want it, I got it")
- *I Got It*—Charli XCX (2017)
- *I Want It, I Get It*—Futuristic (2017)
- *You Want It, I Got It*—Cut Chemist (2018)

(Ex. D.)  Indeed, the phrase "I got it" was used by Grande herself in 2013.  These examples of prior works demonstrate the prevalence of the everyday phrase "I got it" (as well as "want it")

and their variations in musical works long before Plaintiff allegedly composed Plaintiff's Work. *See Pickett*, 420 F. Supp. 3d at 207; *Pyatt*, 2011 WL 2078531, at *8; *Peters*, 692 F.3d at 631. Plaintiff's copyright infringement claim should be dismissed on this basis alone.

           3.       The Generic Cadence of the Phrases At Issue Is
                  Not Protectable and Expressed Differently in the Grande Work

Plaintiff also alleges that the generic rhythm, or cadence, of the rapped words in the chorus of Plaintiff's Work is similar to the rapped words in the Grande Work's chorus, and that it is significant that both choruses comprise eight measures.  (FAC ¶ 58 (alleging similarity of "Rhythmic Structure of the Hooks" and "Metrical Placement of the Phrases"); *see also id.* ¶ 57 ("the rhythmic and lyrical elements embodied by the song's corresponding use within eight-measure sets of rhythmic patterns consistently include identical metrical placements within each composition . . . ."); *id.* ¶ 67 ("'[T]hroughout the eight-measure duration of the Chorus, forty-five notes of 7 RINGS are either identical or substantially similar to I GOT IT . . .'").

Comparing the two choruses side by side, an "ordinary listener" immediately hears that their cadence, or rhythm, is *different*.  Each word in the chorus of Plaintiff's Work has the same rhythmic duration: an eighth note.  (Ex. B.)  By contrast, in the three word phrases comprising the Grande Work's chorus ("I want it, I got it . . ."), the duration of the first word is an eighth note, but the second and third words are sharp, staccato and noticeably shorter sixteenth notes. (*Id.*)  Far from being "identical," the cadences of the two choruses are objectively different.[10]

But even if the cadence with which these common phrases are rapped were the same (and

---

[10] While Plaintiff's new sheet music graphic in the FAC depicts the three word phrases in both choruses as sharing an "eighth note, sixteenth note, sixteenth note pattern" (FAC at p.9), this Court need not credit such allegations where they are flatly contradicted by the materials incorporated into the FAC – *i.e.*, the songs themselves.  *See, e.g.*, *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) ("'The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.'"); *Rapoport*, 88 F. Supp. 2d at 184 ("If these documents contradict the allegations of the amended complaint, the documents control . . .").

they are not), such a similarity does not rise to the level of protectable expression.  Courts have repeatedly held that rhythmic style, meter and tempo are not protectable.  *See Rose v. Hewson,* No. 17 Civ. 1471(DLC), 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018) ("general rhythmic style" not protectable); *West*, 138 F. Supp. 3d at 458 (a "rhythm's style or general feel [are] both uncopyrightable."); *Lane*, 2015 WL 6395940, at *5 ("meter and tempo" and "common rhythms [and] song structures" not protectable); *Gray*, 2020 WL 1275221, at *5 ("building blocks" of music such as "tempos," "alternating 'emphasis of strong and weak beats'" and "rhythms" unprotectable because they are "'ubiquitous in popular music.'"); *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1070 (9th Cir. 2020) (en banc) ("'[A] musical building block . . . is something that no one can possibly own.'").

Moreover, the lyrics at issue are simply rapped, or chanted, and are set to different musical instrumentation that is not at issue; *i.e.,* there is no music, musical notes or pitches at issue.[11]  It is hardly surprising that "I want it, I got it," is rapped somewhat similarly to "you need it, I got it."  Both phrases are common and unoriginal and indeed embody the most basic form of English: single syllable words, each reflecting subject, verb and object, with the natural emphasis falling on the verb when spoken or chanted.  Plaintiff may not claim a monopoly over these building blocks of music, and he certainly may not claim one over the building blocks of everyday spoken English.  *Boone v. Jackson,* 206 F. App'x 30, 33 (2d Cir. 2006) ("[E]ven plaintiff's expert admitted that the phrase 'holla back' spoken in an eighth-note, eighth-note,

---

[11] Despite Plaintiff's allegation that his "experts" concluded that, in the chorus of each song, "'33 out of 36 notes match exactly[,]'" Plaintiff's own sheet music depiction confirms that there are no notes or pitches at issue here – *only spoken words*. (*Compare* FAC ¶ 63 *with id.* ¶ 57.) *See e.g.*, *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice").  Indeed, Plaintiff concedes elsewhere that any "similarities" in the "notes" refers only to "metrical placement," *i.e.*, the differing durations of the different spoken lyrics.  (FAC ¶¶ 60-61.)

quarter-note pattern could not be deemed original."); *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 875 (11th Cir. 2007) (chanted phrase "Go ____, it's your birthday" not protectable).

Nor does the allegation that both choruses are eight measures rescue Plaintiff's infringement claim. *Lane*, 2015 WL 6395940, at *6 ("'Musical structures composed of eight-bar phrases . . . are so commonplace that they have previously been the subject of an opinion concluding that such structures are not protectable.'") (citing *West*, 138 F. Supp. 3d at 458).

Plaintiff adds a single new alleged similarity in the FAC, that both choruses supposedly employ a "call and response" format.  (FAC ¶ 48.)  However, no such device is employed in either work, as a "call and response" – unsurprisingly – requires at least two voices, one to perform the "call," and the other the "response."  Here, there is only a single voice speaking the common phrases in each chorus.  *See Pyatt*, 2011 WL 2078531, at *9 (granting dismissal and distinguishing between the plaintiff's song as "a call and response between a male and a female vocalist" and the defendant's song as "a monologue with a narrative in the first person."); *accord Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 30 (D.D.C. 2010) ("An ordinary listener can discern that the same vocalist who says 'that's what's up' in the chorus of defendants' song also says the preceding words; the section lacks the alternation between musicians or vocalists that is characteristic of call-and-response."), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011).[12]

### B.    No "Substantial Similarity" Exists Between Plaintiff's Work and the Grande Work

Even assuming, *arguendo*, that Plaintiff had alleged even a modicum of similarity of

---

[12] Again, the Court need not credit Plaintiff's contention that the works employ a "call and response" concept where such is contradicted by the very materials on which the FAC relies.  *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 64 ("In copyright infringement actions, the works themselves supersede and control contrary descriptions of them"); *Rapoport*, 88 F. Supp. 2d at 184.  But even if both works employed a "call and response" format (and they do not), such is simply a technique, or musical *idea* that is not copyrightable.  *VMG Salsoul, LLC v. Ciccone*, No. CV 12-0567 BRO (CWx), 2013 WL 8600435, at *8 (C.D. Cal. Nov. 18, 2013) ("The Court finds the overall concept of a call and response pattern to be a musical *idea* that in itself is not protectable."), *aff'd in relevant part*, 824 F.3d 871 (9th Cir. 2016).

*protectable expression* between the two songs (which he has not) and the Court were to examine the works as a whole, this Court can determine on this motion that no substantial similarity exists between Plaintiff's Work and the Grande Work as a matter of law.  *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 64.  "Two works are not substantially similar as a matter of law if 'the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or [if] no reasonable jury, properly instructed, could find that the two works are substantially similar.'"  *Hewson*, 2018 WL 626350, at *3 (citing *Peter F. Gaito Architecture, LLC*, 602 F.3d at 63).

In determining whether two songs are substantially similar, the Court considers "whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"  *Pyatt*, 2011 WL 2078531, at *4.  "In the context of music plagiarism, the Second Circuit has described this ordinary observer test as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'"  *Id.* at *11-12. Courts are guided by a comparison of the "total concept and overall feel" of the two songs "as instructed by [its] good eyes and common sense . . . ."  *Edwards*, 22 F. Supp. 3d at 300-01 (quoting *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66).

Defendants have attached audio recordings of both songs with this Motion.  (*See* Ex. B; *see also* FAC ¶¶ 47-63.)  A comparison of the "total concept and overall feel" of the two songs with "good [ears] and common sense" reveals that the "average observer would not recognize [the Grande Work] as having been appropriated from [Plaintiff's Work]."  *Pyatt*, 2011 WL 2078531, at *5, 7, 9 (quoting *Peter F. Gaito Architecture, LLC*, 602 F.3d at 67).

1.    The Songs Do Not Share Any Music

There are no alleged similarities between the musical notes or instrumentation of the two songs.  This is not surprising, as the music of the two songs is vastly different.  Any ordinary observer can easily recognize the substantial difference in overall musical impression between the songs.  Plaintiff's Work is fully rapped.  It begins with spoken dialogue together with other voices shouting over a high piano riff (that remains unchanged for the entire composition) with the fully rapped lyrics beginning at the 30 second mark.  Plaintiff's Work contains no melody.

The Grande Work, on the other hand, begins with a 14 second synthesized introduction with no overlaying vocals.  Grande then immediately sings *melodic* verses set to the world famous, instantly recognizable (and duly licensed) melody of *My Favorite Things* from Rodgers and Hammersteins' *The Sound of Music*.[13]  *See West*, 138 F. Supp. 3d at 460 (granting dismissal where "[t]he songs have different melodies set over different percussion."); *Lane*, 2015 WL 6395940, at *8 (dismissing infringement claims where any listener "would quickly grasp that the melodies of the two songs are completely different").  The Grande Work is filled entirely with vocals from Grande, while Plaintiff yields a central portion of his work to "Uncle Murda" who raps about supplying drugs and committing murder.  *See West*, 138 F. Supp. 3d at 460 (granting dismissal where "Plaintiff's song has a single vocalist, while Defendants' song features multiple artists and significant spoken rap."); *Lane*, 2015 WL 6395940, at *8 (granting dismissal where plaintiff's song is "sung primarily by Lane" while defendant's song "is supported, at times, by a vocal track in which a male sings and supplies a background layer"); (Ex. B; FAC ¶ 44 (conceding that Uncle Murda "performs on the master recording" of Plaintiff's Work).

---

[13] Plaintiff's self-serving allegation that the chorus of the Grande Work (comprising the rapped phrase "I want it, I got it") is the "most essential and distinguished part[] of 7 RINGS" (FAC ¶ 50), need not be credited by this Court when the melodic verses of the Grande Work are set to the iconic melody of *My Favorite Things*.  *See Rapoport*, 88 F. Supp. 2d at 184 (materials incorporated into the complaint control over conflicting allegations).

The production and instrumentation used in each are also entirely different.  A high-octave, "twinkling" piano and "revving" bass underpin Plaintiff's Work with little variation.  In the Grande Work, by contrast, the melodic verses are sung to staccato, synthesized chords *without bass. See West*, 138 F. Supp. 3d at 460 ("Plaintiff's minimalist music is played on an acoustic guitar, and moves back and forth between the same two chords for the entire song.  Defendants' richer instrumental consists primarily of synthesizer and samples . . ."); *Lane*, 2015 WL 6395940, at \*8 (granting dismissal where "there [exist] a variety of beats, instrumental samples, and supporting background vocal tracks that are absent from [plaintiff's song].").  No average observer could possibly listen to the Grande Work and conclude it was appropriated from the obscure Plaintiff's Work.  *Pyatt*, 2011 WL 2078531, at \*9.

> 2.    The Lyrics of Both Songs, and the
>        <u>Message They Convey, are Vastly Different</u>

A comparison of the songs' lyrics illustrates vast differences between the two works. Apart from the common, unprotectable phrase "I got it" and the partial phrase "want it" (which is expressed differently in each song), there are no other discernable similarities between the songs' lyrics, which are entirely distinctive from a thematic perspective.  (Exs. B & C.)  Indeed, even the "it" has a different meaning in each work.  The subject of Plaintiff's Work is the singer's ability to supply endless narcotics to all who want "it," particularly other people's wives and girlfriends.  Thus, "you need it, I got it, you want it I got it . . . It's all for the profit" refers to the drugs the singer can supply.[14]  Plaintiff's Work is filled with misogynistic references.  (*Id.*)

In contrast, the subject of the Grande Work is female empowerment – that she does not need anyone to buy her "*Favorite Things*" because if she wants it, she buys it herself.  (*Id.*) After singing that she has been through difficult times, Grande comes to the realization that

---

[14] The music video for Plaintiff's Work, incorporated by reference into the FAC, depicts the singer on his cell phone speaking these lyrics while his companions are preparing drugs and counting money.  (¶ 35.)

"Whoever said money can't solve your problems, Must not have had enough money to solve 'em."
(*Id.*)  Only leading into the chorus, Grande declares: "Make big deposits, my gloss is poppin',
You like my hair? Gee, thanks, just bought it, I see it, I like it, I want it, I got it."  (*Id.*)  Thus, "I
want it, I got it" refers to the singer's empowerment to purchase what she desires to improve her
happiness.  *See Lane*, 2015 WL 6395940, at *7 (no substantial similarity between songs where,
although both songs concerned a romantic interest, Plaintiff's lyrics were more "explicit[]"
whereas Defendants' lyrics were "more tame and metaphorical.").

Moreover, the entirety of Plaintiff's Work is intense, dark, and threatening, with the
Plaintiff sneering at his ability to seduce other people's girlfriends and wives with the aid of the
drugs he is selling, all while Uncle Murda threatens violence in connection with these drug
transactions.  (*Id.* Exs. B & C.)

In stark contrast, the verses of the Grande Work – which are sung to the melody of *My
Favorite Things*, not rapped as in Plaintiff's Work – are muted and introspective.  (*Id.*)  That
changes in the spoken chorus of the Grande Work, where the singer is more confident as she
comes to the realization that she can cheer herself up through her own "retail therapy."  (*Id.*)
Simply put, the "feel" of these two songs is entirely different and cannot possibly support a
finding of substantial similarity.  *Guity*, 2019 WL 6619217, at *5; *West*, 138 F. Supp. 3d at 458;
*Edwards*, 22 F. Supp. 3d at 300-01; *Pyatt*, 2011 WL 2078531, at *4, 7-9.

*       *       *

The Court can hear for itself that the two songs are distinct works that leave the listener
with entirely different impressions.  *See West*, 138 F. Supp. 3d at 460 ("Listening to the two
tracks side by side demonstrates beyond dispute how little they have in common.").  No average
observer would recognize the Grande Work as having been appropriated from Plaintiff's Work;

19

rather, the listener is immediately drawn to the melody of the highly recognizable *My Favorite Things*. Accordingly, there is no actionable similarity between protectable elements of Plaintiff's Work and the Grande Work, and the infringement claim should be dismissed with prejudice.[15]

## III. PLAINTIFF'S LANHAM ACT CLAIMS ARE FORECLOSED AS A MATTER OF LAW BY THE SUPREME COURT'S DECISION IN *DASTAR*

Plaintiff also asserts claims for false designation of origin and "reverse passing off" under the Lanham Act. (FAC ¶¶ 93-104.) These claims are based on the same alleged similarities between the two copyrighted works at issue, alleging that Defendants failed to "properly credit[] Plaintiff as the original creator of the work," "misappropriated the artistic talent required to create the work" and "appropriated and copied the original expression of [Plaintiff's Work] without consent, credit or compensation . . . ." (FAC ¶¶ 95, 98, 101; *see also, e.g.*, *id.* ¶ 77 ("Defendants refused to credit Plaintiff as the original creator of this artistic work and his artistic contribution."); *id.* ¶¶ 75, 78-79, 95-96, 98 (further alleging misappropriation of "talent" and failure to credit Plaintiff as an "original creator").) As the Supreme Court – and courts in this district – have made clear, allegations that a defendant failed to properly credit an alleged creator of a copyrightable work are the domain of copyright, not the Lanham Act.

### A. Allegations of "Failure to Credit" or "Misappropriation of Talent" Do Not State a Claim Under the Lanham Act.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, Dastar had released a set of videos depicting the allied campaign in Europe during World War II, which simply rearranged and repackaged a World War II series produced by Fox and its licensees. 539 U.S. 23, 26-27 (2003). These entities sued Dastar, asserting claims for copyright infringement, state-law unfair competition and reverse passing off under the Lanham Act. Although the district court granted

---

[15] Plaintiff's claim for "Statutory Damages" is only a potential remedy under the Copyright Act, and not a separate claim for relief. *See* 17 U.S.C. § 504(a) (infringer can be liable for actual damages *or* defined statutory damages). This "claim" should therefore be dismissed. (FAC ¶¶ 86-92.)

summary judgment in favor of the plaintiffs on their Lanham Act claim and the Ninth Circuit affirmed, the Supreme Court reversed. Observing that the Lanham Act's "common-law foundations . . . were *not* designed to protect originality or creativity," the Supreme Court unanimously held that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and *not to the author of any idea, concept or communication embodied in those goods*." *Id.* at 37. Because Dastar was indeed the "origin" of the physical products (*i.e.* the videos) it sold as its own and the plaintiffs claimed only that Dastar failed to attribute authorship of the materials comprising them, the plaintiffs could not recover under the Lanham Act. *Id.* at 35-37.

Courts in this district – including this Court – have applied *Dastar* and dismissed Lanham Act claims at the pleading stage where, as here, the gravamen of the claims are that the defendant failed to credit the artistic contributions or content creations used within a copyrightable work. For example, in *National Lighting Co. v. Bridge Metal Indus., LLC*, this Court dismissed a reverse passing off claim that "flies in the face of . . . *Dastar*" where the plaintiff alleged that defendant manufactured lighting fixtures with the plaintiff's confidential designs. 601 F. Supp. 2d 556, 564 (S.D.N.Y. 2009) (Buchwald, J.). This Court recognized that *Dastar* required dismissal of the reverse passing off claim where the plaintiff conceded that defendants had actually manufactured the fixtures and was thus the "'producer of the tangible goods' under *Dastar* . . . ." *Id.*; *see also, e.g.*, *Atrium Grp. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 512 (S.D.N.Y. 2008) (*Dastar* required dismissal of false designation of origin claim where plaintiff alleged that defendants' architecture and design books contained "the exact photographs, layout, design and creative content" as plaintiff's works.); *Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) (dismissing reverse passing

off claim and holding that "[t]he significance of *Dastar* for the purposes of this case is that a Lanham Act claim cannot be based on false designation of authorship in Canusa's publications.").

Plaintiff's attempted invocation of the Lanham Act here also "flies in the face" of *Dastar*. *Nat'l Lighting Co.*, 601 F. Supp. 2d at 564. *Dastar* and its progeny foreclose Plaintiff's effort to use the Lanham Act as a vehicle to recover for Defendants' purported "appropriation" of his talent or their alleged failure to credit him with authorship of Plaintiff's Work. Because the FAC contains no allegations beyond those of "appropriation" or "failure to credit authorship" that could possibly support his Lanham Act claims, these claims must be dismissed. *See Wellnx Life Sciences Inc.*, 516 F. Supp. 2d at 285 ("[T]he Supreme Court has held that the mere act of publishing a written work without proper attribution to its creative source is not actionable under the Lanham Act."); *see also Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 463 (S.D.N.Y. 1999) (granting dismissal and observing that "[f]or the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation."). (*See generally* FAC ¶¶ 75-79, 93-104.).

**B.    The Authority Cited by Plaintiff is Inapposite and Relies on Overruled, Pre-*Dastar* Case Law**

In his response to each of Defendants' pre-motion letters, faced with *Dastar* and its progeny, Plaintiff relied solely on the inapplicable case of *Levine v. Landy*, 832 F. Supp. 2d 176 (N.D.N.Y. 2011), to support his preempted Lanham Act claims. (ECF Nos. 30, 26.) In *Levine*, the District Court for the Northern District of New York denied dismissal of a reverse passing off claim where the plaintiff alleged that the defendants "misrepresented the origin of the photographs themselves; not the ideas, concepts, or communications embodied in the photographs." *Id.* at 190. *Levine* is distinguishable from Plaintiff's allegations on this point alone, as the entirety of Plaintiff's Lanham Act claims are not based on a failure to attribute

22

Plaintiff as the origin, or source of the Grande Work, but rather Defendants' alleged failure to credit Plaintiff for only one or two (unprotectable) artistic "ideas" – among many other creative elements – within the Grande Work.  (*See, e.g.*, FAC ¶¶ 75, 77-79, 95, 98, 101.)

But even if *Levine* were not distinguishable on its facts, it would still fail to support Plaintiff's Lanham Act claims because the Court in *Levine* based its decision on the Second Circuit's overruled, pre-*Dastar* decision in *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994).  In *Waldman*, the Second Circuit agreed with the district court that the plaintiff had demonstrated a likelihood of success on a Lanham Act claim for purposes of a preliminary injunction where the text and illustrations in Defendants' adaptations of public domain stories into children's books closely followed Plaintiff's adaptations.  43 F.3d at 783.

The *Levine* Court relied heavily (and incorrectly) on *Waldman's* pre-*Dastar* exposition of the Lanham Act, stating that the Act "'may be used to prevent the misappropriation of credit properly belonging to the original creator of the work[,]" that it "prohibits 'the reproduction of a work with a false representation as to its creator,'" and that "'[t]he misappropriation is of the artistic talent required to create the work . . . .'"  *Levine*, 832 F. Supp. 2d at 190 (citing *Waldman*, 43 F.3d at 780-81). But as courts in this district have recognized, *Levine's* and *Waldman's* interpretation of the Lanham Act as protecting against "misappropriation of artistic talent" and "misappropriation of credit" did not survive *Dastar. See, e.g.*, *Narrative Ark Entm't LLC v. Archie Comic Publ'ns, Inc.*, No. 16-CV-6109(VB), 2017 WL 3917040, at *4-5 & n.2 (S.D.N.Y. Sept. 5, 2017) (dismissing Lanham Act claim as foreclosed by *Dastar* and observing that "*Levine v. Landy* relied on *Waldman* [], which pre-dates *Dastar* and is no longer good law. . . . Accordingly, it is not even clear *Levine v. Landy* is correctly decided.")[16]

_____

[16] As noted in their pre-motion letters, Defendants continue to reserve the right to seek sanctions and/or costs in moving to dismiss the Lanham Act claims.  (ECF Nos. 25, 29.)  Plaintiff refused to withdraw

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR
##         VICARIOUS COPYRIGHT INFRINGEMENT

Because Plaintiff's claim for direct copyright infringement should be dismissed, his claim for vicarious copyright infringement should also be dismissed.  (FAC ¶¶ 105-110); *Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05 CIV. 9646 (JFK), 2006 WL 3161467, at *10 (S.D.N.Y. Oct. 31, 2006) (granting dismissal and holding that "[i]f the direct infringement claim is dismissed, the vicarious claim . . . must also be dismissed, because 'a direct infringement must have occurred' to hold a defendant vicariously liable.") (citing *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998)), *aff'd*, 277 F. App'x 43 (2d Cir. 2008).)

Even if Plaintiff could state a claim for direct copyright infringement (and he cannot), the claim for vicarious infringement would still fail because Plaintiff merely makes the conclusory legal assertion that "[u]pon information and belief, Defendants have the right and ability to supervise the activities of those engaged in the infringement" (FAC ¶ 108), without pleading any non-conclusory fact demonstrating in what way any particular Defendant had such right or ability. Plaintiff's conclusory recitation of an element of the claim is insufficient as a matter of law to state a claim for vicarious infringement.  *See, e.g.*, *Twombly*, 550 U.S. at 562-63; *see also Berry v. Deutsche Bank Trust Co. Am.*, No. 07 Civ. 7634(WHP), 2008 WL 4694968, at *5 (S.D.N.Y. Oct. 21, 2008) ("'The mere fact that the [defendants] could have policed [the infringer] . . . is insufficient to impose vicarious liability'"), *aff'd*, 378 F. App'x 110 (2d Cir. 2010). In addition, Plaintiff's group pleading and failure to distinguish between which defendants are allegedly liable for the direct infringement and which defendants are allegedly liable for vicarious infringement necessitates dismissal of *both* claims.  *See Atuahene v. City of Hartford*, 10 F.

---

these claims even after Defendants repeatedly explained to Plaintiff's counsel that they are foreclosed by *Dastar* and its progeny.  (ECF No. 27.)

App'x 33, 34 (2d Cir. 2001); *Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070 (LGS), 2017 WL 2684065, at *5 (S.D.N.Y. Jun. 20, 2017).

## CONCLUSION

Plaintiff has been given multiple opportunities to plead a cognizable claim against Defendants based on the Grande Work, at considerable expense to Defendants.  Even with the benefit of *two* detailed pre-motion letters and the authorities cited therein, he has failed to do so.  The Court should respectfully (i) dismiss the FAC in its entirety with prejudice without leave to amend; and (ii) grant Defendants such other and further relief as this Court deems just and proper.

Dated: New York, New York
       September 29, 2020

**PRYOR CASHMAN LLP**

By:_____*/s/ Ilene S. Farkas*_____
       Ilene S. Farkas
       ifarkas@pryorcashman.com
       Frank Scibilia
       fscibilia@pryorcashman.com
       Matthew S. Barkan
       mbarkan@pryorcashman.com
7 Times Square
New York, New York 10036
Tel: (212) 421-4100

*Attorneys for Defendants*

25